MORRIS *v.* HELLUMS COMPANY.

Opinion delivered December 22, 1917.

1. CONTRACTS—COMMERCIAL TERMS—"COTTON SEASON."—Appellant agreed to perform certain services for appellee in the buying and selling of cotton "during the cotton season in said year." In an action by appellant against appellee for a sum due appellant under the contract, *held,* the court properly permitted persons engaged in the cotton business to testify that usage in the locality where the contract was made fixed the season for buying and selling cotton from about September 1 to May 1, of the following year.

2. CONTRACTS—COMMERCIAL TERMS—"COTTON SEASON."—Under the facts as set out in the preceding syllabus, *held,* the words "cotton season" as used in the contract meant buying and selling cotton from September 1, 1914, to about May 1, 1915.

3.  CONTRACTS—RULES FOR INTERPRETATION.—In construing the words
    of a contract such effect should be given to each word and pro-
    vision in the contract that, when read in the light of each other
    and as an entire contract, no conflicts remain, the several parts
    should be interpreted so as to make a harmonious whole.

Appeal from Lincoln Circuit Court; *W. B. Sorrells,*
Judge; reversed.

*Coleman & Gantt,* for appellant.

1.  Appellant substantially performed his part of the
contract, and is entitled to recover. He was employed
for one year, and devoted his time and attention to the
business during the *cotton season.* Even if, after the cot-
ton season he had nothing to do, he was entitled to his
salary. 26 Cyc. 1018; 1 Labatt, Master & Servant, § 288,
and note; 32 N. W. 865.

2.  The court erred in its instructions. No breach of
duty was proven and the burden was on appellee to prove
such breach. 1 Labatt, M. & S., § § 271, 354, note, p. 1119.

3.  Evidence of usage was admissible to show the
"cotton season." 2 Elliott on Cont., § 1770; 12 Cyc.
1088; 58 Ark. 573; 69 *Id.* 313. The court takes judicial
knowledge of a custom so well known. 118 N. W. 292;
26 Cyc. 1019. See also 129 N. W. 645; 57 S. E. 902; 2
Elliott on Cont., § 1614; 1 Labatt, M. & S., § § 190, 433.

*E. W. Brockman,* for appellee.

1.  The contract must be considered as a whole, and
effect given to all its terms, so as to arrive at the inten-
tion of the parties. 94 Ark. 493; 93 *Id.* 497; 99 *Id.* 112;
96 *Id.* 320; 104 *Id.* 475.

2.  It was the duty of the court to construe the con-
tract. 78 Ark. 574. The cotton season only lasted eight
months. Custom can not vary the terms of a written
contract. 85 Ark. 568; 100 U. S. 686. Parol evidence of
custom was not admissible. 124 Ark. 432; 56 Ark. Law
Rep. 350; 55 *Id.* 264.

3.  Plaintiff can not recover for a year's service and
work only eight months. 52 *Id.* 494.

4. There is no error in the instructions, and the verdict is supported by the evidence. 102 Ark. 200.

HUMPHREYS, J. Appellant brought suit against appellee in the Lincoln Circuit Court for an alleged balance of $600 due him upon a written contract of employment to buy and sell cotton for appellee at Grady, Arkansas, during the cotton season of 1914-15. Appellee denied that it owed appellant any balance on the contract. The cause was submitted on the pleadings, instructions of the court and oral evidence, upon which a verdict was returned and judgment rendered in accordance therewith, dismissing the complaint. An appeal has been prosecuted to test the correctness of the construction placed upon the contract by the trial court. The contract is as follows:

"This agreement made and entered into on this the 30th day of May, 1914, by and between Hellums & Co. of Grady, Arkansas, as party of the first part, and G. E. Morris of Pine Bluff, Arkansas, as party of the second part, witnesseth:

"That the party of the first part hereby hires and employs the party of the second part to buy and sell cotton for it at Grady, Arkansas, for a period of one year commencing September 1, 1914, and ending one year thereafter.

"The party of the second part shall devote his time and attention to said business during the cotton season in said year, and shall take charge of buying and selling all cotton in which the party of the first part may deal.

"For his said services the said party of the first part hereby agrees to pay to the party of the second part the sum of eighteen hundred dollars ($1,800) to be paid in monthly installments at the rate of one hundred and fifty dollars ($150) a month during the period of said employment. Also all necessary expenses, such as traveling expenses, phone bills, livery bills, etc. In addition thereto the party of the second part shall be paid an amount equal to one-third of all profits arising or accruing to the

party of the first part from the buying and selling of cotton by him or under his management. To arrive at said amount, the salary of eighteen hundred dollars ($1,800) and expenses above outlined, hereinbefore provided for, shall be deducted from the gross profits of said cotton business and one-third of the remainder shall be paid to the party of the second part as a part of his compensation for his services in buying and selling cotton for the party of the first part as herein provided.''

The undisputed evidence is that appellant worked under the contract for appellee two months and received $300 therefor; that then it became apparent to both parties that no immediate necessity existed for an expert cotton buyer or seller in connection with the business conducted by appellee, on account of a demoralization of the cotton market occasioned by the European war; that by mutual agreement appellant accepted employment from Bennett & Co., cotton buyers in Pine Bluff, for a period of six months at $150 per month, with the understanding that the amount of $900 should be credited on the contract between appellant and appellee; that at the expiration of the contract with Bennett & Co. appellant did not return to Grady and offer to buy and sell cotton for appellee during the months of May, June, July and August, 1915; that appellant resided at Pine Bluff, twenty-one miles by rail from Grady, and had a telephone; that appellee made no request after the expiration of the Bennett contract for appellant to buy or sell any cotton for it; that the cotton season began about September 1 and ended about May 1, of each year, and that it was usual for cotton buyers employed by the year to work during the cotton season only; and that appellee sold and bought no cotton after May 1, 1915, and had nothing for appellant to do except to sit around.

The court construed the contract to mean that appellant must either buy or sell cotton, or actually report and offer to perform said duties for the full period of one year, in order to collect the entire contract price; and at

the request of appellee, instructed the jury to that effect over the objection of appellant.

The appellant requested an instruction which was refused by the court to the effect that it was his duty under the contract to devote his time and attention to buying and selling cotton for appellee during the cotton season, and to buying and selling all cotton in which appellee dealt during the year, except when at work for Bennett & Co.

(1-3) There is little or no difference between appellant and appellee as to the facts. The main difference between them being in the construction of the contract, as reflected by the conflict in the instructions requested by each. The contract is before us for construction. The only words contained in the contract of doubtful signification are "cotton season." These are words peculiar to the business of buying and selling cotton and were properly susceptible of explanation by persons familiar with their meaning. The court did not err in permitting persons engaged in the cotton business to testify that usage in the locality where the contract was made fixed the season for buying and selling cotton from about September 1 to May 1 of the following year. *Western Assurance Co.* v. *Altheimer,* 58 Ark. 565; *McCarthy* v. *McArthur,* 69 Ark. 313. Under the undisputed facts in the instant case, the words "cotton season," as used in the contract, mean buying and selling cotton from September 1, 1914, to about May 1, 1915. In construing contracts the purpose should be to ascertain the intent of the parties to the contract. Such effect should be given to each word and provision in the contract that, when read in the light of each other, and as an entire contract, no conflicts remain. In other words, the several parts should be interpreted so as to make a harmonious whole. *Read's Drug Store* v. *Hessig-Ellis Drug Co.,* 93 Ark. 497; *Ayers* v. *Heustess,* 94 Ark. 493; *Johnson* v. *Wilkerson,* 96 Ark. 320; *Earl* v. *Harris,* 99 Ark. 112.

In interpreting the contract by the aid of these familiar canons of construction, the first clause need not be

discussed as it simply fixed the date of, designated and located the parties to the contract. No conflict whatever existed between the second and fourth clauses. The second clause fixed the term of employment at one year and the fourth clause fixed the year's salary at $1,800, payable in twelve equal monthly installments, and in addition thereto provided for expenses of appellant and a division of the profits. The only seeming conflict exists between the third clause and the second and fourth clauses. It is said that if the third clause meant that appellant should work only eight or nine months, then it conflicted with the third and fourth clauses which provided for buying and selling of cotton by appellant for appellee for a year, or from September 1, 1914, to September 1, 1915. The only reasonable construction that can be given clause 3, so as to make it harmonize with clauses 2 and 4, is to say that the intention was that appellant should devote his whole time and attention to buying and selling cotton for appellee during the cotton season or from September 1, 1914, to about May 1, 1915; and that he should buy and sell all cotton in which appellee might deal during the remainder of the contract period. Of course, he was released from either duty by mutual agreement during the time he worked for Bennett & Co. There is nothing in the contract requiring appellant to report for duty each day after the expiration of the cotton season. He resided only a short distance from Grady, and could have been reached by telephone. It is admitted there was nothing for him to do but sit around. Appellee neither sold nor bought cotton after May 1, the end of the cotton season. We think the clear intendment of the contract was that appellant should report for duty each day during the cotton season and when needed during the balance of the contract period. Under this construction it follows that it was incumbent upon appellee to notify appellant in case he was needed at any time after the cotton season. The cause was fully developed, and under the undisputed evidence appellant should have recovered $600 with interest

at 6 per cent. per annum from the 1st day of September, 1915, less $58, advanced or loaned to him by appellee.

The judgment is therefore reversed and judgment entered here for $542, with interest from date of suit at the rate of 6 per cent. per annum until paid.