PARKER *v.* SIMS.

4—2587

Opinion delivered June 20, 1932.

*Cochran & Arnett,* for appellant.

*Partain & Agee* and *Rhyne & Shaw,* for appellee.

SMITH, J. On December 29, 1931, appellants filed exceptions to the final report of Lee G. Sims as liquidating agent of the insolvent Bank of Ratcliff, and caused notice of those exceptions to be served on Sims on January 1, 1932. A demurrer to these exceptions was filed on January 14, 1932. This demurrer was not disposed of, as on the same day an amended pleading was filed which enlarged and made more specific the original exceptions to the liquidating agent's report. A demurrer was also filed to this amended pleading, which alleged that it did not state facts sufficient to constitute a cause of action, and that the court was without jurisdiction of the action. The demurrer was sustained, and this appeal is from that decree.

Upon a suggestion of the diminution of the record in this case, there was issued a writ of certiorari, and the response of the clerk of the chancery court has brought before us the entire proceedings in the chancery court relating to the liquidation of the insolvent bank.

The appellants seek by their pleadings in this cause to question the fees allowed the liquidating agent and certain fees paid attorneys, and the allowance of certain credits claimed in the final report of the liquidating agent.

The proceedings in the chancery court, stated chronologically, are to the following effect: After taking over the bank as an insolvent institution, the Bank Commissioner filed in the chancery court a petition for an order to sell certain assets of the bank at private sale, and to compound certain debts regarded as bad or doubtful. An order granting the prayer of this petition was made June 2, 1930. A complete inventory of the assets of the bank had been previously filed May 26, 1930. The bank had been taken over by the Bank Commissioner on May 20, 1930.

On April 23, 1931, a detailed report was filed showing all claims, both general and preferred, which had been filed and allowed and paid, together with a statement

of all bills payable outstanding at the closing of the bank and of those paid since that date.

On May 15, 1931, an order was asked to make a final payment of 15 per cent. to the depositors, which, it was recited, would pay the depositors in full. Attached to this petition was the final report of the liquidating agent.

Upon obtaining the order to pay depositors, there was filed on May 25, 1931, a petition for an order directing the liquidating agent to call a meeting of the stockholders pursuant to the provisions of § 725, Crawford & Moses' Digest, to wind up the affairs of the bank in the manner provided by that section of the Digest. This section provides that, whenever the Bank Commissioner has paid the depositors and creditors of a bank (excluding stockholders) whose claims have been approved and allowed, and all expenses of liquidation, he shall call a meeting of the stockholders by giving notice for two weeks in some newspaper published in the county where the bank was located, at which meeting the stockholders shall determine whether the Bank Commissioner shall be continued as liquidator or whether the stockholders shall select an agent or agents for that purpose. At this meeting each stockholder is allowed one vote for each share of stock owned. If it is then so determined, the Bank Commissioner shall complete the liquidation of the bank's assets. If, however, it is determined to appoint an agent or agents for that purpose, such agent or agents are then elected by the stockholders, and such agent or agents are required to execute a bond, to be approved by the Commissioner, for the faithful performance of the trust, and thereupon the Commissioner "shall transfer and deliver to such agent or agents all the undivided or uncollected or other assets of such corporation then remaining in his hands; and upon such transfer and delivery the said Commissioner shall be discharged from any and all further liability to such bank and its creditors."

On June 15, 1931, there was filed in the chancery court a petition by Taylor, as Bank Commissioner, and Sims, as liquidating agent, praying that they be dis-

charged and that the liquidating agent's final report be approved. This petition recited that notice had been given as required by § 725, Crawford & Moses' Digest, and that the stockholders had held a meeting pursuant thereto. The petition sets out the minutes of this meeting, which contained the following recitals:

C. O. Parker was elected chairman of the meeting, and W. R. Chastain was elected secretary. The owners of a majority of the capital stock of the bank were present. The Deputy Bank Commissioner, as liquidating agent, made a report of the present status of the assets of the bank. A motion was unanimously adopted naming Parker, Chastain and John Baker, appellants herein, as agents of the stockholders "to determine the manner in which further liquidation shall be handled," and to employ such assistants as may be necessary for that purpose, and, pursuant to this purpose, they had employed Chas. X. Williams and Paul X. Williams.

This petition recited that the remaining assets so to be liquidated "are listed in a statement attached to this petition, and marked Exhibit A." This statement, made Exhibit A, contains a list of all the creditors, to which objection is now made. On the same day Parker, Chastain and Baker, as agents of the stockholders, filed in the chancery court a certificate of their appointment of Chas. X. and Paul X. Williams as liquidating agents, pursuant to authority conferred at the stockholders' meeting, to complete the liquidation of the affairs of the bank. Thereafter, and on the same day, the application of Taylor, as Bank Commissioner, and that of Sims, as his deputy, and the certificate of appointment of the stockholders' agents came on for hearing, and were approved by the court. This order recites that there is attached to the petition of the Bank Commissioner and that of his deputy "an inventory and list of the remaining assets of the bank" which remained after the credits were allowed, which are here questioned. The Commissioner and his deputy were discharged after being directed to "turn over and deliver to Chas. X. Williams and Paul X.

Williams, as such special liquidating agents, all of the assets listed as Exhibit A to the petition filed in this cause."

It is not questioned that this order was fully complied with by the Bank Commissioner and his deputy. This order was made and entered on June 15, 1931, and thereafter no further action was taken until Parker, Chastain and Baker filed their exceptions to Exhibit A of the report above mentioned.

The act creating the Fourteenth Chancery District, of which Logan County is a part (act 18, Acts of 1927, page 55), provides that three sessions of court shall be held each year in each district of that county, and that terms for the northern district, from which this appeal comes, shall be held the third Monday in February, June and October. The June term of the court, at which time the Commissioner's report was approved, had expired, and the October term had intervened before the exceptions of appellants to that report were filed, and no appeal has been prosecuted from the order of court made at the prior term.

The decree of the June term of the court had therefore become final, and could be vacated or modified only in the manner provided by § 6290, Crawford & Moses' Digest. It is insisted, however, that this proceeding is authorized by the fourth paragraph of that section, which provides that the court in which a judgment or final order has been made shall have power, after the expiration of the term, to vacate or modify such judgment or order, "* * * Fourth. For fraud practiced by the successful party in the obtaining of the judgment or order."

The original exceptions made no charge of fraud, and the fraud alleged in the amended pleading was that the liquidating agent, acting as a deputy of the Bank Commissioner, had secured the approval of his report without notice to appellants as agents of the stockholders, and by reporting to the court that there was no objection thereto, whereas appellants had not consented to its ap-

proval, and, had they been advised of the hearing of such report, they would have objected to numerous credits therein taken as being excessive or unauthorized by law.

. Section 6292, Crawford & Moses' Digest, provides the procedure for vacating judgments under the fourth, fifth, sixth, seventh and eighth subdivisions of § 6290, and requires the filing of a complaint verified by affidavit. If the amended exceptions be treated as a complaint— which may well be done—yet it was not verified, and the court may have sustained the demurrer upon that ground, treating it as a motion to strike.

But we think there was no such fraud as required the court to vacate the decree on that ground. The law is settled that the fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment assailed. It must be a fraud practiced upon the court in the procurement of the judgment itself. *Scott* v. *Penn,* 68 Ark. 494, 60 S. W. 235; *Womack* v. *Womack,* 73 Ark. 281, 83 S. W. 937; *James* v. *Gibson,* 73 Ark. 440, 84 S. W. 485; *Boynton* v. *Ashbranner,* 75 Ark. 415, 91 S. W. 20; *Parker* v. *Bowman,* 83 Ark. 508, 104 S. W. 158; *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166, 118 S. W. 250; *Williams* v. *Alexander,* 90 Ark. 591, 119 S. W. 1130; *Pattison* v. *Smith,* 94 Ark. 588, 127 S. W. 983; *Cassady* v. *Norris,* 118 Ark. 449, 177 S. W. 10; *Parker* v. *Nixon,* 184 Ark. 1085, 44 S. W. (2d) 1088.

It is also settled that the mere fact that a larger judgment was rendered than the facts justified does not show that a judgment was procured by fraud. The remedy for such an erroneous judgment is by way of appeal. *Estes* v. *Lucky,* 133 Ark. 97, 201 S. W. 815.

The case of *H. G. Pugh & Co.* v. *Martin,* 164 Ark. 423, 262 S. W. 308, was one in which a petition had been filed to vacate a judgment as having been fraudulently rendered. It was there said that: "The court was correct in

disposing of the appellants' petition or motion to vacate the decree as if a demurrer had been filed thereto, and in refusing to allow appellants to introduce testimony in support of the allegations of the petition. While the petition alleges fraud, collusion, and many other irregularities, there is no allegation setting forth facts sufficient to show that any fraud was perpetrated upon the court in the rendition of its decree of foreclosure.''

Here there was no effort to introduce testimony, and the appellants stood upon their pleadings.

In sustaining the demurrer in the instant case, the chancellor had before him all the orders which he had himself previously made, and all the pleadings upon which those orders had been made. He knew, from his own orders and the record in the case, that the liquidating agent had made a full report of all his proceedings, which report asked credit for all the items here questioned. The chancellor had before him the minutes of the stockholders' meeting above referred to, which recited that this report was before the stockholders at that meeting, and there is nothing in the minutes of the meeting to indicate that any objection had been or would be made to this report. All parties knew that it was the purpose of the liquidating agent in calling this meeting to secure the discharge of himself and his principal, the Bank Commissioner, and that this order would not be made until the report of his administration had been submitted to and approved by the court, and they knew that the liquidating agent had been discharged and his successors appointed. The discharge of the Deputy Bank Commissioner as liquidating agent and the appointment of his successors occurred on the same date, and both orders were made in response to pleadings filed on that day. All parties in interest were before the court, either in person or through their chosen representatives.

Treating as true, as we must do, on demurrer, the allegations of appellants' complaint that the representation was made to the court that there was no objection to the liquidating agent's report, there was no fraud in

this. The facts stated herein warranted that assumption. However, it is not to be assumed that the report was approved by the court, notwithstanding this representation, without examination thereof by the court, and the judge, of course, knew whether he had performed his duty in this behalf.

It is insisted that the records to which we have referred were not offered in evidence when the court disposed of the demurrer, and that we should therefore consider only the allegations of appellants' complaint. These records were, however, before the court. Now, while it is true that courts cannot take judicial notice of their own records in other cases pending therein, even between the same parties, it is nevertheless true that a court does take judicial notice of pleadings upon which it has passed judgment and of those judgments in the particular case then under consideration. In *Williams* v. *Wheeler*, 131 Ark. 585, 199 S. W. 927, it was said: "Again, all the matters set forth in the motion were a part of the proceedings and pleadings, and it was the court's duty to take judicial notice of them. It was not necessary to prove them."

Moreover, we are of the opinion that appellants have not moved with that diligence which the law requires. The case of *Trumbull* v. *Harris*, 114 Ark. 493, 170 S. W. 222, was a proceeding to vacate a judgment under § 4431, Kirby's Digest (now § 6290, Crawford & Moses' Digest), and it was there said: "It is the duty of a litigant to keep himself informed of the progress of his case, and a party seeking relief against a judgment on the ground of unavoidable casualty or misfortune preventing him from defending must show that he himself is not guilty of negligence, and he cannot have relief if the taking of the judgment appears to have been due to his own carelessness." We there also quoted from the case of *Izard County* v. *Huddleston*, 39 Ark. 107, as follows: "In the case last cited the court said: 'The statute to vacate judgments by this proceeding is in derogation, not only of the common law, but of the very important policy of

holding judgments final after the close of the term. Citizens must have confidence in the judgments of our official tribunals as settlements of their controversies, and there should be some end of them. Unless a case be clearly within the spirit and policy of the act, the judgment should not be disturbed.' '' See also *Farmers' Mut. Fire Insurance Co.* v. *Defries,* 175 Ark. 558, 1 S. W. (2d) 19, and cases there cited.

Upon the whole case, we think no error was committed in sustaining the demurrer, and the decree must therefore be affirmed, and it is so ordered.