JAMIESON v. JAMIESON.

5-425                                    268 S. W. 2d 881

Opinion delivered June 14, 1954.

*Caldwell T. Bennett,* for appellant.

*Charles F. Cole,* for appellee.

ED. F. McFADDIN, Justice.    This appeal results from the unsuccessful effort of Mrs. Jamieson to set aside— after the lapse of the term—a divorce decree obtained by Mr. Jamieson. The divorce was granted on September 8, 1952, and it was not until April 14, 1953, that Mrs. Jamieson filed her present petition asking the Court to vacate the decree. She claimed that Mr. Jamieson

testified falsely in the divorce case when he said that he was a *bona fide* resident of Arkansas.

In the record before us, we have the pleadings and the testimony in the divorce case. In the complaint, filed on May 2, 1952, Mr. Jamieson alleged that he moved to Independence County, Arkansas, on February 20, 1952, ". . . with the intent then and there of becoming a *bona fide* resident of Independence County, Arkansas, and has since that date been domiciled in Independence County, Arkansas, having rented a home there and having secured employment in said county, and has lived in said county continuously since removing here from Rock Island County, Illinois."

A warning order was duly published on the complaint, and Mrs. Jamieson, a resident of Illinois, was notified by the *attorney ad litem,* who is her present counsel. Later this attorney appeared for Mrs. Jamieson in the divorce proceedings and cross-examined the witnesses. Mr. Jamieson testified on September 8, 1952, that he had lived in Batesville approximately six months. On cross-examination, this occurred:

"Q. You are telling us you have moved to Arkansas and going to become an Arkansawyer, is that right?

"A. That is right."

In the divorce decree of September 8, 1952, Mr. Jamieson was directed to pay Mrs. Jamieson $10.00 per week thereafter for maintenance; and seems to have complied with such order. Shortly after the decree, Mr. Jamieson returned to Illinois; and then on April 14, 1953, Mrs. Jamieson filed the present petition to set aside the divorce decree, saying:

"That the plaintiff, Wallace V. Jamieson, is not and was not a *bona fide* citizen and resident of the State of Arkansas, or of the County of Independence, at the time of filing his petition for divorce, nor at the time of the rendition of the decree.

"That after the rendition of the aforesaid decree, that the plaintiff, Wallace V. Jamieson, left the City of

Batesville, County of Independence, State of Arkansas, and returned to the City of Moline, Illinois, where he has been actively engaged in the operation of an automotive garage.''

The only evidence offered to support the petition to vacate was the deposition of Mr. Jamieson taken in Rock Island County, Illinois; and in that deposition he still insisted that as soon as he could conclude some litigation and business matters involving his Illinois property, he intended to return to Arkansas.[1]

We have repeatedly held that after the lapse of the term, the Trial Court loses jurisdiction to set aside its

---

[1] Here are typical portions of Mr. Jamieson's testimony:

"Q. What was your intention in going to Arkansas in regard to establishing your residence?

A. My intention was to get an easy job and buy a place along the river and hunt and fish.

Q. Was it your intention to establish a residence in Arkansas?

A. Yes.

Q. When were you divorced?

A. September 8, 1952.

Q. Now after the divorce was granted did you leave the State of Arkansas?

A. I did.

Q. About when?

A. It was about the 15th.

Q. Of September?

A. Yes.

Q. Was there any reason for leaving Arkansas?

A. My boy took sick.

Q. Which boy?

A. Verne.

Q. You got word that he was sick?

A. They called me long distance that he was in the hospital.

Q. You came back for that reason?

A. I did.

Q. Did you intend when you came back here to leave Arkansas permanently and establish your residence in Rock Island County, Illinois?

A. I did not.

Q. What is your intention with respect to returning to the State of Arkansas as a place of permanent residence after your building is completed and your deal with the City of Moline has been completed?

A. I intend to go back and to remain and to become a citizen of Arkansas.

Q. Do you know where you intend to go?

A. I'd like to go to Batesville, Arkansas."

decrees, except by (a) proceedings under § 29-506, Ark. Stats., or (b) Bill of Review in Equity, or (c) for error of law apparent on the face of the record. *Fawcett* v. *Rhyne*, 187 Ark. 940, 63 S. W. 2d 349; *Raymond* v. *Young*, 211 Ark. 577, 201 S. W. 2d 583; *Hagen* v. *Hagen*, 207 Ark. 1007, 183 S. W. 2d 785, and *Felker* v. *Rice*, 110 Ark. 70, 161 S. W. 162.

The present proceeding is one brought under § 29-506, Ark. Stats. If we consider it as being under the first sub-division—*i.e.*, evidence discovered after the term—we find that Mrs. Jamieson has not acted promptly in filing this proceeding. Mr. Jamieson returned to Illinois on September 15, 1952; yet Mrs. Jamieson delayed the filing of this petition until April 14, 1953. *Mo. Pac.* v. *George*, 200 Ark. 560, 140 S. W. 2d 680; *Trumbull* v. *Harris*, 114 Ark. 493, 170 S. W. 222; *Tune* v. *Vaughan*, 170 Ark. 971, 281 S. W. 906, and *Parker* v. *Sims*, 185 Ark. 1111, 51 S. W. 2d 517.

If we consider this as a proceeding to set aside the judgment of divorce because of the fourth ground set forth in § 29-506, Ark. Stats.—*i.e.*, fraud practiced by the successful party in obtaining the decree—we likewise reach the conclusion that the judgment of the Trial Court must be affirmed. The question of Mr. Jamieson's *bona fide* residence in Arkansas was an issue in the divorce case, yet Mrs. Jamieson did not appeal from the decree of divorce. In *Alexander* v. *Alexander*, 217 Ark. 230, 229 S. W. 2d 234, in discussing what is fraud in the procurement of the original decree sufficient to justify the Court in setting aside the decree under § 29-506, Ark. Stats., we quoted from *Parker* v. *Sims*, 185 Ark. 1111, 51 S. W. 2d 517:

"The law is settled that the fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment assailed."[2]

---

[2] To the same effect see *Blankenship* v. *Montgomery*, 218 Ark. 864, 239 S. W. 2d 272; and *Manning* v. *Manning*, 206 Ark. 425, 175 S. W. 2d 982.

Likewise, in *Alexander* v. *Alexander, supra,* we quoted from *United States* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93, as to acts which constitute intrinsic or collateral fraud:

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interest to the other side,— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. . . . On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

The question of Mr. Jamieson's *bona fide* residence in Arkansas was an issue in the divorce case. He testified that he was a resident. Mrs. Jamieson's present attorney cross-examined Mr. Jamieson on that point. If Mr. Jamieson was not a resident of Arkansas, then he committed perjury, but perjury in the original case is not an *extrinsic* fraud.

On the showing here made by Mrs. Jamieson, we conclude that the Trial Court was correct in refusing to vacate the original decree of divorce. Affirmed.

The Chief Justice concurs.

Justice WARD not participating.