WELLER *v.* STUDEBAKER BROTHERS MANUFACTURING COMPANY.

### Opinion delivered January 10, 1910.

1. JUDGMENT—VACATING FOR FRAUD—BURDEN OF PROOF.—One who seeks to vacate a default judgment on the ground that it was procured by fraud assumes the burden of proving such fraud.  (Page 470.)

2. SAME—VACATING FOR FRAUD.—A proceeding under Kirby's Digest, § 4433, to set aside a judgment for fraud whereby the judgment-defendant lost its defense, will fail where the judgment-plaintiff was guilty of no fraud or concealment, and the defense was lost by the judgment-defendant's negligence.  (Page 471.)

Appeal from Baxter Circuit Court; *John W. Meeks,* Judge; reversed.

#### STATEMENT BY THE COURT.

The appellant, being the owner of a lot of timber at Iuka, Baxter County, wrote the appellee in June, 1907, proposing to manufacture and sell said timber, and on July 3, 1907, appellee wrote Mr. Weller that it would buy his timber at certain prices quoted, and giving him directions how to cut and ship it, etc.

Weller failed to get a mill to cut his timber at that time, and nothing more was done till October 7, 1907, when Weller wrote the company that he would be ready to cut in a month or six weeks, as it would probably take that long to get the mill running.  On October 11, 1907, the company replied to said

letter that it confirmed its proposition of July 3, 1907. Weller bought a mill, erected it, cut his timber and began cutting out the bill under the contract, and on January 20, 1908, wrote the company that he had his mill running and would soon have two cars ready for shipment, and the rest would follow soon on his contract for ten cars of wagon stock. January 22, 1908, the company wrote Weller a reply to his letter, in which it stated: "We note that you have two cars of stock out on memorandum order placed with you by Mr. Anderson, but that Anderson failed to send in a copy of the order, and consequently was not registered on the books." That the panic had struck them, and they could not take up the timber, and for him to stop sawing, stack the timber and cover it, and, as soon as they were again in position to receive material, would give him shipping instructions, but could not tell when that would be, but was sure it would not be until summer or the latter part of the year. On January 27 Weller wrote the company explaining his condition and urging it to comply with the contract, and on the 29th the company wrote him, admitting the order, but stated that it did not think it a binding contract, but directed him to stack the timber so it would not damage, sell it if he could, but that, if he could not sell it, they would try to take it up some time, but could not tell when it would be.

On May 11, 1908, Weller filed suit in the Baxter Circuit Court against the company for $1,984 damages, and secured due service of the summons on May 30, 1908. At the September term of the court following, appellant obtained judgment by default.

Several months later the appellee filed its complaint, alleging that said judgment was secured by fraud of Weller and his attorneys, Horton & South, and asking that the same be vacated and a new trial be granted.

J. H. Weller, plaintiff in original case and defendant in complaint for vacating judgment, filed an answer to said complaint as follows: (1) He denies that the judgment obtained by him against said plaintiff at the September term of this court was obtained by any fraudulent act, concealment or misrepresentation on the part of the defendant and his attorneys or either himself or his said attorneys. (2) The defendant denies that the

plaintiff used due diligence or any diligence in preparing for its defense in said suit; but negligently failed to appear and defend in said case, and suffered the same to go to judgment by default; and, if any wrong has been done to the plaintiff, it was the result of his own negligence. (3) He denies that his attorneys, owed any duty to said plaintiff which they have refused or neglected to perform.

The evidence on behalf of appellee tended to show that it received a letter dated June 1, 1908, from its agent in Arkansas enslosing service of summons; that on June 26, 1908, it directed a letter to be written to J. H. Weller in which, after noting the fact that suit had been brought against it by him, it says: "We have gone through the correspondence and papers relating to this claim, and believe there is a misunderstanding on your part concerning the exact situation. We would, therefore, greatly appreciate it if you will place us in touch with your attorneys in order that we may canvass with them the basis of your claim."

This letter by mistake was addressed to J. H. Wells, but was received by Weller. He did not answer it. About the first of July, 1908, appellee sent its timber inspector to "Mr. Weller's place" "to take up what lumber he had manufactured and to fix the business up and have him·(Weller) continue cutting and to finish filling the order." This witness was asked: "Did you not go there for the purpose of compromising the case with Mr. Weller and tell him so?" He answered: "Yes, sir; and I told him (Weller) he could cut more lumber to finish the order." This witness further testified that he understood that Weller had a contract, but that he (witness) did not know whether he did or not. The same witness and another witness also who went to inspect and "take up" the lumber cut by appellant on the order of appellee testified that only a small per cent. of the lumber he had cut was according to the specifications furnished him by appellee. But, in the view we have of the case, it is unnecessary to go into this evidence further. A witness for appellee further testified: "That, after quoting prices of material to Weller, they heard nothing further from him. He never did indicate that he would accept the proposition until he advised that he had cut two carloads of material. We just advised that we were giving certain prices for certain material. We had no contract with

him. He never accepted our offer, or informed us that he was sawing."

On the 2d day of September, 1908, appellee wrote a letter to appellant in which they say: "We wrote you letter on June 26. Not having any reply to this letter, we find on investigation that the letter was addressed to J. H. Wells, but the letter has not been returned. If received by you, we regret that we have not had any reply. We still feel as said before concerning this claim, and would be glad to have you give us the name of your attorney, in order that we may get in communication with him. Of course, if we cannot get a satisfactory reply from you before the first day of September term of court, we shall instruct our attorney to file our appearance and take such other steps as will be necessary to protect us, stating to the court at the same time that we have undertaken to get in touch with your representatives with a view to canvass the situation and determining the equities in the matter, and give this as our reason for any delay that may be necessary in order to properly face the trial if it finally comes to an issue. We are registering to make sure that it does not go astray.

"Scott Brown, Asst. Genl. Counsel."

On the same day appellee wrote Horton & South as follows: "We have secured the name of your firm from Hubbell's Directory, to which we are subscribers, and write you asking you to represent us to the extent that may be necessary in connection with the suit started against this company by J. H. Weller, of Iuka, Ark. We enclose carbon copy of letter that we have just written to Mr. Weller, and would ask that, if you do not receive word from us to the contrary, you file our appearance and answer in such form, prior to the first day of September term of court, as may be necessary to retain to us all our rights as defendant in this action. If, for any reason, you cannot represent us in this matter, kindly wire us, immediately on receipt of this letter, at our expense, as we shall need to arrange immediately for other representation. If you can represent us, kindly write us immediately on receipt of this letter, and we shall then furnish you with a full statement of the facts; and if proper adjustment is not made with Mr. Weller, we shall expect you to conduct the case for us."

.Scott Brown, a witness for appellee, testified that he was the assistant general counsel for appellee, and also assistant secretary; that he directed the writing of the letters set out above to Weller and to Horton & South of date September 2, 1908, and he identified registry receipt of letter to J. H. Weller, and further testified that he did not receive any letter from Horton & South until the letter from them dated November 17, 1908, in which they informed the company that they had obtained judgment for J. H. Weller in Baxter Circuit Court at the September term and notifying the company that if the judgment was not paid they would take garnishment proceeding to collect the money.

On cross-examination the witness admitted that he did not know whether the letters dictated by him for the company to Weller and Horton & South of September 2, 1908, were mailed to them. He wrote the letters, and the stenographer attended to the mailing. He had charge of said case all of the time as assistant general counsel, and he learned of the institution of the suit in June, 1908, and he knew that the suit was in Baxter County and Mountain Home, the county seat, and that he made no effort to get an attorney to represent the company, except what appeared in the letter to Horton & South. That he has been practicing law since 1899; that the company had an agent in Baxter County in June, 1908, looking after this matter, and that he knew that court convened in September, and probably knew that it convened on the first or second week; that he did not make any inquiry about the case after September term of court, until he received the letter from Horton & South above mentioned. He also attached calendar of September, 1908, showing that Baxter Circuit Court convened on the 14th day of said month.

The testimony on behalf of appellant was, in substance, that as soon as appellant had brought suit a Mr. Marks, representing appellee, went to see appellant, and stated that he had come to settle up the matter, and wanted appellant to cancel his contract with the company and dismiss his suit, and said he would take up the timber appellant had cut, and give him a contract for more timber than the one he had, and appellant refused to dismiss his suit unless appellee would pay him $1,500 in cash for his

damages, but Marks said he had no authority to make such settlement as that. On June 10, 1908, Weller wrote the company at Marks's request that Marks had been there, and that he would not settle "on any other than a cash indemnity for damages."

Appellant after the letter of June 26 did not hear any more from them (by letter) until about the 10th of September, 1908, when he received a registered letter containing the letter above set out to Horton & South. Appellant placed this letter in an envelope addressed to Horton & South and walked three miles next morning to get the letter to Horton & South that day. The appellant did not understand what the letter meant. He did not conceal anything from the appellee about his suit, did not conceal anything from the court, and did not think his attorneys had done so. The case was set for trial the fourth day of the court. Appellant had four witnesses in attendance, and, his expenses being heavy, he was insisting on a trial. He and his attorneys discussed the question of the letter, and appellant believed that appellee was working to get a continuance of the case, and that it was not acting in good faith in claiming that it desired to employ Horton & South. He insisted on a trial, and secured it on the fifth day of the term, and obtained judgment herein sought to be set aside. The deputy postmaster corroborated the testimony of Weller to the effect that the latter received registered letter from appellee September 10, 1908, that Weller opened the letter at the office, and there was a letter in it from appellee to Horton & South, and nothing else in the envelope.

J. C. South testified that his firm of Horton & South represented Weller in the suit brought by him against appellee, that his firm was not employed by appellee, that the firm had never been subscribers to Hubbell's Legal Directory, that the only letter his firm ever received from appellee was the one sent in envelope to Mr. Weller and forwarded by him to Horton & South, that at the time the letter was received by the firm his wife was very sick, and he could give but little attention to court matters. Mr. Horton was absent on a trip to Oklahoma. He took care of most of the mail for the firm. He only returned at the beginning of court, and had not opened the letter until appellant came to court. When appellant came to court, he asked about the

letter; then Mr. Horton looked the letter up, and they discussed its contents, and he tried to send appellee a message two or three different times before taking judgment, but could not get the connection with telegraph office over the 'phone, the same being out of order, but that was their only means of getting wire to appellee, and it failed. He told the court about the letter his firm had received from appellee, and. about the substance of its contents, before taking judgment against appellee. He also explained to the court that his client was in poor circumstances and was on expenses, that some of the witnesses had sick families at home, and that his client was urging a trial. He inferred that appellee wanted the firm to file an answer for it, but it sent no papers and no data, and no retainer fee. He informed the court of the letter in substance.

Horton testified that he did not return from Oklahoma until September 14, that he got the firm's mail and was answering it as fast as he could. He had not opened the letter from appellee until appellant on Wednesday or Thursday night came to court and asked his firm if it had received the letter from appellee. It was then that he found the letter, and they discussed its contents. He concluded, like Weller, that the letter to his firm was a subterfuge to get a continuance. He was at a loss to know whether the letter was sent first to appellant through mistake or on purpose. The appellee did not send to his firm any data, any statement of facts to show that it had any defense to the action. Hence he did not believe it was depending on his firm to represent it. The appellee waited until court to write his firm. Appellee was served with process in May. He did not think they would have been treating their client right, under the circumstances, if they had not taken judgment for him. Had the company written his firm in a reasonable time before court, they would have informed appellee that they were employed by appellant, and could not therefore represent appellee. When the appellee had its agent at Mountain Home in June, they were not consulted about the matter, and there were other lawyers in town besides the firm of Horton & South. The letter his firm received was postmarked September 3. It arrived at Mountain Home postoffice September 11, and never reached his hands until September 17. He did not state the contents of

the letter to the court that he remembered, but his understanding was that Mr. South did state the contents of the letter. If they had written appellee after getting the letter, it would not have received the letter before the case was tried. Mr. South's wife was at the point of death at the time of the trial, and he could not assist him (Horton) in court. No telegram or letter came to Horton & South except the letter in evidence.

The court set aside the judgment rendered at its September (1908) term in favor of appellant against appellee, and from this order vacating the judgment the appellant has duly prosecuted this appeal.

*S. W. Woods,* for appellant.

The court had no authority to vacate the judgment except upon one of the grounds set out in section 4431, Kirby's Dig. Appellee bases its action upon the fourth ground, which is for fraud in the procurement of the judgment. This statute being in derogation of the common law, the case must be clearly within the spirit of its enactment, else it cannot be invoked. 33 Ark. 454; 39 *Id.* 107; 46 *Id.* 552; 52 *Id.* 316; 63 *Id.* 323; 10 A. & E. Cas. 1104. The fraud must consist in the procurement of the judgment. 68 Ark. 492; 73 *Id.* 281; 73 *Id.* 440; 10 A. & E. Cas. 1104; 17 A. & E. Enc. (2 ed.) 828. And will never be presumed. 17 Ark. 151; 20 *Id.* 216; 38 *Id.* 419; 68 *Id.* 449; 77 *Id.* 351. The evidence in this case fails to establish fraud in the procurement of the judgment. Nor does the evidence establish the existence of a valid defense on the part of appellee at the time of the rendition of the judgment. Kirby's Dig. § 4434; 49 Ark. 397; 50 *Id.* 458; 54 *Id.* 539; 73 *Id.* 281; 83 *Id.* 17.

*McCaleb & Reeder,* for appellees.

The evidence adduced brings this case clearly within the fourth ground in section 4431 for setting aside a judgment. 12 Heisk. (Tenn.) 323; 32 Ark. 717; 73 *Id.* 281; 89 *Id.* 359; 23 Am. Dec. 720; 23 Cyc. 918; 51 N. E. 235; 63 N. W. 464; 32 N. E. 715; 23 N. W. 441; 60 S. W. 1035; 94 N. W. 969; 86 N. W. 638. A judgment may be set aside for misconduct of an attorney amounting to *constructive fraud,* as defined in 23 Cyc. 919, and 2 Pomeroy, Eq. Rem. § § 620, 649. 68 S. W. 396; 52 S. W. 642; 9 Ark. 354; 2 Words and Phrases, 1470. It has been held that courts have the inherent power of setting aside judgments

obtained through fraud, etc., independent of statutory provision. 23 Cyc. 907; 67 N. E. 39; 82 N. W. 62; 1 Black, Judgments, § 321; 23 Am. Dec. 720. And a statute authorizing the opening or vacating of a judgment should be liberally construed. 18 Abbott, Pr. 21; 66 N. W. 810; 9 S. W. 218. A proceeding to vacate a judgment is addressed to the sound discretion of the court; and unless that discretion is shown to have been abused, the court's action will not be disturbed. 46 S. E. 856; 46 *Id.* 823; 23 Cyc. 895 and cases cited. Appellee alleged and made out a complete defense to the original action. 32 Ark. 717; 63 *Id.* 323; 83 *Id.* 17. The evidence fails to establish the existence of a valid contract between the parties. 34 Ia. 218; 19 Minn. 535; 51 Am. Rep. 1; 38 Tex. 85; 136 Mass. 511; 52 Ia. 417; 48 Am. Rep. 516. The amount of the judgment was excessive. 56 Ark. 309; 60 *Id.* 151; 5 L. R. A. 493; 3 Page, Cont., 1591.

Wood, J., (after stating the facts). 1. This is a proceeding under section 4433, Kirby's Digest, and seeks to vacate a judgment under the authority of section 4431, Kirby's Dig., as follows:

"The court in which a judgment or final order has been rendered or made shall have power, after the expiration of the term, to vacate or modify such judgment or order. * * *

"Fourth. For fraud practiced by the successful party in the obtaining of the judgment or order."

The evidence does not warrant a finding that fraud was practiced by appellant in obtaining the judgment which was vacated in this proceeding. Yet that is the only ground set up in the petition. The evidence shows that appellant, through whom appellee sent its communication to Horton & South, was exceedingly diligent in transmitting it to them, after he received it. The evidence shows that Horton & South, after they were advised of the contents of the letter of appellee requesting them to file answer or to notify appellee if they could not do so, used all the diligence that they could have been expected to exercise to notify appellee that they were employed by appellant and therefore could not represent appellee. The testimony of Horton & South gives a reasonable explanation of why they did not discover the contents of the letter earlier. They were under no legal or moral obligations to appellee. They were under a legal

as well as a moral obligation to serve their client to the best of their ability, and, as we view the evidence, they could not have been more courteous to appellee without being derelict to their client. He was insisting on a trial, and, for aught that appears to the contrary, he was entitled to it. He was not practicing any fraud or deception on the court in insisting on a trial of his case. He believed, and at least one of his counsel shared the same belief, that the letter to Horton & South was but a subterfuge to secure a continuance of the cause. The letter itself, as well as the circumstances under which it was transmitted, warranted such conclusion on their part, even though, in fact, their conclusion may have been erroneous. If appellant believed that he had a meritorious cause of action against appellee, and that appellee was endeavoring by the method adopted to postpone the day of settlement, he was not culpable, and was practicing no fraud, in urging his case to a hearing. Nor could his counsel have ignored his request to insist on a trial, under the circumstances, without being unfaithful to him. The evidence is set out in detail and speaks for itself. We do not discover any element of fraud, either actual or constructive, in the case. There were no concealments or misrepresentations on the part of appellant or his counsel.

The burden was on the appellee, and it fails to show that any fraud was practiced on the court by appellant in obtaining the judgment against appellee. On the other hand, the testimony of appellant and of his attorneys, Horton & South, shows affirmatively that no fraud was practiced. The testimony of appellant and of Horton and of South is reasonable and consistent. When considered with all the other evidence, the only reasonable conclusion to be drawn from it is that no fraud was practiced on the court in obtaining the judgment, but that appellee lost its defense, if it had any, to appellant's alleged cause of action through its own negligence. This court in *Izard County* v. *Huddleston,* 39 Ark. 107, said: "The statute to vacate judgments by this proceeding is in derogation not only of the common law, but of the very important policy of holding judgments final after the close of the term. Citizens must have confidence in the judgments of our judicial tribunals as settlements of their controversies, and there should be some end of them. Unless a case be clearly

within the spirit and policy of the act, the judgment should not be disturbed."

The judgment is therefore reversed with directions to dismiss the petition to vacate judgment.