BARRINGER *v.* WHITSON.

4-6963　　　　　　　　　　　168 S. W. 2d 395

Opinion delivered February 8, 1943.

*Byron Bogard,* for appellant.

*F. W. A. Eiermann,* for appellee.

HOLT, J. Appellant sued appellee to vacate a default judgment in the amount of $700, rendered against her at a former term of the court wherein the appellant here was the defendant. As grounds therefor she alleged in her petition that she is a negro woman sixty years of age; that appellant filed suit against her August 1, 1941, and that she was duly served with summons; that on the 20th day after receiving said summons she appeared in the Pulaski circuit court and remained for several hours awaiting her case to be called, but that she later learned that no court was in session on that day; that a few days later appellee's attorney, F. W. A. Eiermann, came to her home, talked to her about the case and told her that she need not go to court; that there was nothing to the lawsuit, and that relying upon the advice of appellee's attorney she failed to take any further action to protect her interest, and had in fact forgotten about the matter until about March 15, 1942, when the sheriff of Pulaski county levied an execution upon her home and advertised it for sale to satisfy the judgment which appellee had obtained; that she immediately began an investigation and discovered that the judgment had been rendered against her by default on November 19, 1941. She further alleged that the statements made to her by appellee's attorney completely misled her, "threw her off guard and caused her not to make a defense to the action; that she was lulled into a false sense of security by said statements, relied on them absolutely and by reason thereof failed to make any defense; that she had a complete, meritorious defense to the lawsuit itself in that the said Ernest Toby, who was driving the automobile at the time of the collision alleged in the original cause, was not her employee, as alleged, but that he had borrowed the automobile in question from her for his own benefit, in that he was to attend certain church services on his own accord, and that defendant had no interest in said trip whatsoever and had no knowledge of the accident or the events leading up to it." Her prayer was

that the judgment be set aside, and that she be granted a hearing in the cause.

Appellee filed motion to dismiss appellant's petition on the ground "that said petition fails to comply with the statutory provisions as contained in §§ 8246, 8248 and 8249, Pope's Digest," and denied the allegations contained therein.

Upon a hearing there was presented to the court the testimony of appellant, testifying in her own behalf, and the testimony of appellee's attorney, Eiermann, who testified on behalf of appellee. The court found the issues in favor of appellee, and this appeal followed.

For reversal appellant relies upon sub-section 7, § 8246 of Pope's Digest which provides: "The court in which a judgment or final order has been rendered or made shall have power, after the expiration of the term, to vacate or modify such judgment or order, (7) for unavoidable casualty or misfortune preventing the party from appearing or defending." The petition to vacate the judgment having been filed after the expiration of the term at which it was rendered, it was necessary for appellant not only to bring herself within the provisions of the seventh sub-division, *supra,* but she must also show that she had a valid defense to the cause of action. *Little Rock C. of C.* v. *Reliable Furniture Co.,* 138 Ark. 403, 211 S. W. 371.

There appears to be no material conflict in the testimony presented. Appellant is a negro woman sixty years of age and a widow. She testified that she had never had any experience in court prior to this litigation; that she had known Mr. Eiermann, appellee's attorney, for many years and had great confidence in him since he had been attorney for her husband prior to his death; that Mr. Eiermann came to see her before the damage suit was filed against her and thereafter and on one of the visits (we quote from appellant's testimony): "Q. What did you talk about? A. That is what we talked about; he told me there wasn't nothing to it. Q. You talked about this lawsuit? A. Yes, sir. Q. It is important, Pearl, to give us as near as you can, and as

much as you can about this conversation. A. After Judge Eiermann told me there wasn't nothing to it, I had confidence in him and didn't think any more about it''; that after this conversation she heard no more about the case until execution was issued. Mr. Eiermann testified that he made at least two trips to appellant's home to effect a compromise settlement of the suit for damages against her, and we quote from his testimony: '' 'Well,' she said, 'I haven't got anything, all that I have is that car; that property across the street belongs to the estate, and I haven't any interest in that.' 'Well,' I said, 'If you haven't got anything there won't be anything to the lawsuit, and we can't get anything from you.' I said, 'Now, bear in mind, if you have anything you had better bring about a compromise settlement,' and she said, 'No, I haven't got anything,' and those were the only two times I came to see her.'' This conversation took place while the suit was pending. Quoting further from his testimony: ''Q. Why didn't you tell her, Doctor, you had better go and get you a lawyer, I am representing the other side? A. When you say, file an answer, that means you have to have a lawyer. I called her attention to the wording of the summons and it only requires that she should file an answer in that time and not go into court. . . . Q. You took this judgment against her on November 19, wasn't it? A. Yes. Q. Did you have any conversation with her from August until November? A. No, no reason for it. Q. Never was by there any more? A. Why should I? Q. You didn't get out an execution on your judgment before the term expired. A. That is true. Q. You got your judgment in November and waited until March to get out an execution? A. Yes. Q. You knew the new term started the first week in March? A. Yes, sir. Q. Is that the reason you waited? A. Yes, sir.'' He further testified that on August 1 he wrote a letter to appellant in which he, among other things, said, ''I shall see you some time next week, as I promised you, and if you will make settlement with me for Mr. Whitson, we shall immediately withdraw the lawsuit and no harm is done. You may rest assured I will treat you right in the premises.''

By reason of the fact that appellee's attorney represented appellant's husband prior to his death she had complete confidence in him and relied upon his advice.

In the light of the testimony presented by this record we think that no other reasonable conclusion can be reached than that appellee through his attorney, by his conduct, misled this simple, inexperienced, trusting negro woman into believing that the suit which appellee had filed against her amounted to nothing and that she need pay no attention to it. By his actions he lulled her into a false sense of security, the legal effect of which amounted to an ''unavoidable casualty or misfortune'' which prevented appellant from appearing or defending. In fact we think the testimony of appellee's witness alone is sufficient to support this view. In the case of *McElroy* v. *Underwood,* 170 Ark. 794, 281 S. W. 368, this court said: ''There was such a misunderstanding as constituted unavoidable casualty or misfortune which prevented the defendant from appearing and defending. There is no room to suspect—and the lower court did not find—that plaintiff's attorney had intentionally misled the defendant, but the defendant and her husband, who was her representative in the matter, did testify that they were misled, and, because of that fact had not arranged with the attorney they intended to employ to file an answer presenting a defense, which, if true, would defeat a recovery, and had not furnished the attorney the information needed to prepare the answer.'' See *Weller* v. *Studebaker Bros. Mfg. Co.,* 93 Ark. 462, 125 S. W. 129.

Appellant has stated a valid defense to the suit wherein the default judgment in question was rendered against her. In fact, appellee makes no contention to the contrary. We conclude, therefore, that the court erred in refusing to set aside the default judgment in accordance with the prayer of appellant's petition, and accordingly the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.