TENNISON v. TENNISON.

4-9084                                          227 S. W. 2d 138

Opinion delivered February 27, 1950.

*Shaver, Stewart & Jones,* for appellant.

*Smith & Sanderson,* for appellee.

GRIFFIN SMITH, Chief Justice. The Court refused to reduce payments of maintenance and alimony, and the former husband as petitioner has appealed.

. . . .

When Mrs. Jimmie Tennison procured a divorce in 1935 there was incorporated in the decree a plaintiff-defendant stipulation regarding the property settlement. The Court found that the husband had complied with paragraphs 2, 3, 4, and 5 of the contract by executing deeds, making payments, or by delivery.[1]

---

[1] The executed contract covered a cash payment of $5,000, an attorney's fee of $250, plus court costs and other expenses, conveyance to Mrs. Tennison of the Texarkana home, bill of sale for household furnishings and an automobile, and payment of the first installment of $200 on alimony-maintenance.

That part of the decree relating to future payments is: "By consent of the parties . . . it is ordered that the defendant shall, . . . until and unless this decree is modified, . . . pay to the plaintiff $200 per month for support and maintenance of herself [and the four children]; . . . said sum, however, shall be subject to reduction by order of this Court, upon the death or remarriage of plaintiff, or upon any other changed condition, upon proper application to this Court. . . . Hereafter plaintiff shall have no other . . . right to claim any other . . . sum . . . than the monthly allowance here made, or the monthly allowance which may hereafter be fixed by the Court under this consent decree".[2]

Shortly after the petition was filed counsel for appellee submitted interrogatories and asked that certain information be given under oath. Specifically, it was requested that a financial statement be submitted. Appellant moved to strike, asserting that his financial condition had nothing whatever to do with a determination of the issue. Supplementary to the interrogatories it was sought by subpoena *duces tecum* to bring up for inspection certain records pertaining to Tennison's interests in corporations with which he was connected. In overruling the motions the Chancellor said that counsel for the petitioner had stated—as a reason for the denial—that his client was able to pay any sum that might be adjudged.

At trial the petitioner's financial condition was again made the subject of inquiry, and in open Court Tennison affirmed what his attorney had asserted. He did not know with reasonable certainty what his net worth was. His business records were so complicated that a great deal of time would be required to ascertain the true situation. For the same reasons Tennison did not know or would not say what his net annual income was, but rested on the proposition that his stipulation of ability to pay was all that the Court was entitled to.

---

[2] One of the four children died shortly before trial. The others are: James D. Tennison, Jr., 31 years of age, married and residing in Memphis, Tenn.; Jack Craig Tennison, 28, married and residing in West Memphis, Ark.; Alys Jo, 22, married.

There is no cross-appeal, and we do not pass upon the prejudicial nature of this attitude. Materiality of the information was first addressed to the trial Court. In the circumstances here appellee has waived the exception predicated upon her contention that the records sought by subpoena and responses to the interrogatories were improperly denied.

Appellant's admission, under persistent questioning, that his present net worth is fifty percent greater than in 1935, is important.[3] It supports what the Chancellor seemingly found: that payments have not been an inequitable hardship. The remaining question was whether, under the divorce decree, petitioner was entitled to a reduction on the ground that an adjustment was contemplated by the parties and by the Court.

Appellant correctly says that the property settlement (not an issue here) reflected an accord between husband and wife, and was contractual. In the absence of fraudulent inducement affecting its execution, the agreement could not be modified by judicial action. *McCue* v. *McCue,* 210 Ark. 826, 197 S. W. 2d 938. But, with complete earnestness, counsel for appellant insist that clear language in the decree shows mutual contemplation that a downward revision would be made if, upon application with appropriate notice, the Court should be convinced that the reason for maximum compliance had terminated.

We must reject appellant's argument that retention of jurisdiction for a single purpose, to be determined in a particular way, was contractual. Where monthly or periodic payments are directed the indeterminate nature of the decree carries with it the Court's power of enforcement. Courts of equity have inherent power to enforce decrees awarding alimony, and may do so ''by punishing as for contempt''. *Harvey* v. *Harvey,* 186 Ark. 179, 52 S. W. 2d 963.

The changed conditions mentioned in the decree must be construed to mean conditions that, in good con-

---

[3] Whether the "net" inferentially alluded to in discussing appellant's annual income was before or after taxes was not disclosed. The reference to $25,000 was not made a point of controversy.

science, would justify the relief. In the case at bar no such showing was made, and the Chancellor correctly dismissed the petition.

Affirmed.