Ex Parte Johnston.

4717                                                251 S. W. 2d 1012

Opinion delivered October 27, 1952.

*S. L. Richardson,* for petitioner.

*W. J. Schoonover* and *James A. Robb,* for respondent.

WARD, J. The petitioner, Wilburn L. Johnston, received a divorce from his wife, Lucille Johnston, October 4, 1947. The decree of divorce provided that he should pay $35 per month for the support of their two small children, Sammy Lee and Mary Ann, and it also reserved in the court jurisdiction to make other orders for the care of the children.

The husband not having made the payments provided for in the original decree, appropriate legal steps were initiated and on May 4, 1952, a petition was filed by the ex-wife and two children alleging delinquency in payments "both prior to and continuously from March 4, 1952" and asking that the husband show cause on June 4, 1952, why he should not be held in contempt of court.

On the last above-mentioned date the Chancellor on exchange heard the case and found the petitioner guilty of contempt and remanded him to the custody of the sheriff pending further orders of the court. The Chancellor, also, in a written statement set out that in view

of the fact he was not the regular Chancellor, he would allow the petitioner to be discharged from custody if he would pay $50 for support of the children pending a further hearing by the regular Chancellor on August 13th.

Petitioner filed a response to the citation for contempt in which he did not deny being behind with the payments, but alleged that he had not paid because he was not financially able to do so, and he asked that the original decree be modified and that he be relieved from making the said monthly payments. Since we are affirming the decision of the Chancellor, only a summary of the evidence produced at the hearing will suffice.

The only evidence produced was that of the petitioner and his witnesses and there is no question but that he showed he was a man of little financial means. Petitioner is 29 years old, has married again and has two small children by his second wife. He stated that he had low blood pressure, indicating he was unable to do hard and continuous manual labor. He owns no land, but is farming about 60 acres in corn for which he pays one-third as rent. He owns his household goods and farming implements including a tractor, truck, etc., and also owns a milk cow, all of which are mortgaged for a considerable portion of their value. It takes all he has been making to feed and clothe his present family and he has to borrow money from his landlord to make a crop. It costs him about $30 to $35 per month to feed his family and he now is behind a month or two with his grocery bill.

On the other hand, some facts were developed which we think justified the Chancellor's decision. Petitioner's statement that he had low blood pressure was uncorroborated and the work he did, such as farming and carpentering, certainly indicates he was a man of reasonable health and strength. Some of the money he owes was borrowed from his father over the past year or two and he gave his father a mortgage after this proceeding was instituted. Likewise, he gave his landlord a mortgage on all his crops while the matter was pending, notwithstanding his landlord already had a lien for his

rent and advances. Though his landlord had already advanced him about $400, he was still willing to advance him $200 or $300 more, and felt safe in doing so. The lowest estimate showed that his crop will be worth something like $2,000, and the evidence indicates he has several hundred dollars' equity in his farm equipment. The evidence indicates that he might have tried to mislead the court as to the condition of his truck. Petitioner admits that all his time is not consumed in his farming operations and also admits that he has not tried, at least not consistently, to obtain other employment.

Considering the facts developed in this case, some of which are set out above, we do not feel justified in saying the Chancellor abused his discretion in holding petitioner in contempt of court, or, to say it another way, in coming to the conclusion that petitioner could have made substantial payments for the support of his children by his first wife if he had honestly tried to do so.

The law in contempt cases, though not voluminous, seems to be well settled. We find in 172 A. L. R., at page 876, what seems to be the accepted rule in these words:

"So, the enforcement by contempt of a court's orders in respect to the payment of a child's support by its father is a matter that rests in the sound discretion of the chancellor, just as it is in his sound discretion either to relieve altogether or in part or compel payment of an accumulation of unpaid allowances."

We note here that the special Chancellor expressed a willingness to offer easy terms to the petitioner which he did not see fit to accept, and we have no doubt that the regular Chancellor will, when the occasion arises later, provide terms for petitioner's release from custody which are reasonably within his financial ability.

It is well-settled law, as recognized in the case of *Hervey* v. *Hervey*, 186 Ark. 179, 52 S. W. 2d 963, that imprisonment for contempt can only be justified on the ground of willful disobedience of the orders of the court.

The same case, however, holds that the decision of the chancellor will not be disturbed unless it is against a preponderance of the evidence. Here we are unwilling to say the chancellor's finding was against the preponderance of the evidence. This rule is in harmony with, if not the same as, the rule first above announced.

As recognized in the case last cited above and also in *Tennison* v. *Tennison,* 216 Ark. 784, 227 S. W. 2d 138, chancery courts have inherent powers to punish for contempt for disobedience to their orders. It seems to us that this power is especially important if chancery courts, with their limited means, are to guard the rights of dependent children in cases like this.

Some question was raised by petitioner regarding the proper function of the Writ of *Certiorari* in this and similar cases. We call attention to the approval of this method of procedure as sanctioned in *Ex Parte Butt,* 78 Ark. 262, 93 S. W. 992, and in *Ex Parte Caple,* 81 Ark. 504, 99 S. W. 830.

In view of the conclusions reached above, the petition is denied.