217 So.2d 37 (1968)
Mrs. Renee G. LIEBENDORFER, Plaintiff-Appellant,
v.
James F. GAYLE, Defendant-Appellee.
No. 2351.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1968.
On Rehearing October 3, 1968.
Rehearing Denied November 20, 1968.
Writ Refused February 24, 1969.
*38 John Sheldon Toomer, Lake Charles, for plaintiff-appellant.
Hall, Raggio, Farrar & Barnett, by, Louis D. Bufkin, Lake Charles, for defendant-appellee.
Before CULPEPPER, HOOD, and LEAR, JJ.
LEAR, Judge.
This is another chapter in the unfortunate history of these party litigants. See Liebendorfer v. Gayle, La.App., 210 So.2d 120.
In this proceeding, plaintiff, ex-wife of defendant and mother of his four minor children, again alleges the judicial separation of 1959 and the "settlement of community" of March 23, 1960, entered into between the parties herein.
In this proceeding, however, petitioner complains of the status of certain shares of stock in the Texas Fund, Inc., which she alleges is being held by defendant as sole trustee for three of the four minor children, and which she alleges should be returned to the community mass and partitioned between her and her ex-husband for two reasons: First, that the Louisiana law prohibits a trust settlor from being the sole trustee under a trust agreement, and, secondly, that defendant had agreed to equalize this stock amongst all four children, which he has failed and refused to do.
She next asserts that defendant obtained recognition of his individual ownership in certain stock in that corporation known as Open A-1 Ranch, Inc., through fraud and deception practiced upon her, and that therefore the entire settlement of community agreement should be declared null and void.
Insofar as the shares of Texas Fund, Inc., are concerned, the record clearly shows that said shares have been equalized among the four children, and we feel that the district court has correctly disposed of this issue, as follows:
"The evidence reflects that the shares of stock have been registered in accordance with the Louisiana Gifts to Minors Act, R.S. 9:735 et seq. The court is of the opinion that the intent of Mr. Gayle and Mrs. Liebendorfer, as reflected by the documentary evidence, was to donate the securities in question to the minors and for Mr. Gayle to hold them as custodian. While it is true that he has only recently caused the shares to be registered properly, the court has absolutely no doubt that he has been holding the shares on behalf of the minors as custodian and that there has been no improper conduct on his part * * *.
"There is no suggestion and no proof that Mr. Gayle has in any way disposed of, misused, or otherwise improperly handled the shares belonging to the minors. The only justified criticism of his conduct would be with reference to the delay in having the shares registered in correct form, and no damage or prejudice to the minors has resulted. Otherwise, the shares have been kept safe for the minor owners."
We now consider whether the trial court correctly sustained the exception of res judicata as to the plaintiff's attack on the community property settlement. The learned trial judge stated:
"The exceptor urges res judicata in bar of the present suit. His contention, the *39 facts of which are established by the evidence presented, is that the community property settlement between the two parties here was incorporated in an Arkansas proceeding, which was entitled `Renee Gayle v. James F. Gayle', Number 32,982 on the docket of the Chancery Court of Garland County, Arkansas."
The plaintiff, who is the same person as the present plaintiff, Mrs. Liebendorfer, obtained the divorce in Arkansas and had the community property settlement incorporated in the Arkansas decree on June 1, 1960. Therein the court specifically recognized and approved the agreement.
The trial court noted the pronouncement of the Louisiana Supreme Court in Sheard v. Green, 219 La. 199, 52 So.2d 714, wherein an exception of no cause or right of action was upheld in an almost identical situation. The basis of such holding was that the attack was a collateral attack on a judgment of a sister state and the court could consider only the question of jurisdictional requirements of domicile.
In our opinion, the law has now been changed. See Boudreaux v. Welch, 249 La. 983, 192 So.2d 356 (1966), followed by this court in Gay v. Gay, 203 So.2d 379. In Gay v. Gay we said:
"A collateral attack may be entertained here if the rendering state would permit such an attack."
In the instant case, plaintiff alleges fraud on the part of her husband in the original community property settlement which she later incorporated into the Arkansas decree. Plaintiff is entitled to show that such an attack is permissible in Arkansas (which is likely the case).
The judgment of the trial court insofar as Texas Fund, Inc., is concerned is affirmed; insofar as that portion regarding Open A-1 Ranch, Inc., is concerned, the judgment of the trial court is reversed and the matter remanded to the trial court.
Affirmed in part, reversed in part, and remanded.

On Rehearing.
En Banc.
CULPEPPER, Judge.
We granted a rehearing to reconsider whether the lower court judgment, sustaining defendant's exception of res judicata, must be affirmed. In our original decision we concluded that, under Gay v. Gay, 203 So.2d 379 (3rd Cir. 1967) and the authorities cited therein, the plaintiff can collaterally attack in the courts of Louisiana the Arkansas judgment ratifying the community property settlement, if Arkansas would permit an attack on the judgment in its courts. We remanded the case to allow plaintiff an opportunity "to show that such an attack is permissible in Arkansas."
In his application for a rehearing, the defendant points out that, under the provisions of LSA-C.C.P. Article 1391, we must take judicial notice of the laws of Arkansas. Defendant contends that under the laws of Arkansas a judgment can be set aside for extrinsic fraud but not for intrinsic fraud; and since no extrinsic fraud has been alleged or proved this judgment could not be annulled in the courts of Arkansas, hence cannot be collaterally attacked in the courts of Louisiana and must be given full faith and credit.
We find the applicable law of Arkansas is set forth in the recent case of Hardin v. Hardin, 237 Ark. 237, 372 S.W.2d 260 (1963). There the former wife petitioned the court to set aside a divorce decree on the grounds that it was procured by fraud practiced on the court. Essentially, the allegations were that through connivance with her husband a certain witness forced plaintiff to make love, during which they were "discovered" by the defendant and a *40 lawyer; that she thought the paper she signed was to give a divorce to her husband, but in fact it was a petition for her to secure a divorce from him. The Supreme Court of Arkansas found the allegations of fraud insufficient to permit an attack on the judgment and stated the law as follows:
"In our opinion the trial court was correct in sustaining appellee's motion to dismiss the above petition. Appellant very properly admits that her petition was based on Ark.Stat.Ann. § 29-506 (Repl.1962). This section, in all parts pertinent to the facts in this case, provides:
"`The court in which a judgment or final order has been rendered or made, shall have power, after the expiration of the term, to vacate or modify such judgment or order,
* * * * * *
"`Fourth. For fraud practiced by the successful party in the obtaining of the judgment or order.'
"(2) Few of our statutes have better withstood the test of time or have been more uniformly interpreted than the section above quoted. Without any change in wording it appears in the Civil Code (as § 571), Gantt's Digest (as § 3596), in Kirby's Digest (as § 4431), in Crawford & Moses Digest (as § 6290), in Pope's Digest (as § 8246), and, of course, in Ark.Stat.Ann. as § 29-506. The statute has been considered by this Court with reference to each of the above designations, and each interpretation has been consistent and harmonious. In no case has it been construed in language with more clarity than in an opinion written by Justice Butler in Hendrickson v. Farmers' Bank & Trust Company, 189 Ark. 423, 73 S.W.2d 725. It was there said:
"`The fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. It is not sufficient to show that the court reached its conclusion upon false or incompetent evidence or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, in issue in the proceeding before the court which resulted in the decree assailed. James v. Gibson, 73 Ark. 440, 84 S.W. 485; Johnson v. Johnson, 169 Ark. 1151, 277 S.W. 535; Boynton v. Ashabranner, 75 Ark. 415, 88 S.W. 566, 1011, 91 S.W. 20.'"[1]
*41 Arkansas law, as set forth above, follows the general rule that equitable relief from a judgment may be obtained for extrinsic but not intrinsic fraud. The rationale of this distinction is that an issue which has been, or with due diligence should have been, tried and passed upon in the original action should not be retried in an action for equitable relief against the judgment, otherwise litigation would never end. 30A Am.Jur. 722, et seq.; 49 C.J.S. Judgments § 372, p. 738 et seq.[2]
A brief review of the facts in the present case shows that the parties were married in Louisiana in 1947 and separated from bed and board by judgment of the district court for Calcasieu Parish, Louisiana, on September 29, 1959. In the separation proceedings and the settlement of community property which followed thereafter, Mrs. Gayle (the present Mrs. Liebendorfer) was represented by Mr. Joe J. Tritico and Mr. Gayle was represented by Mr. Thomas L. Raggio, both attorneys being highly competent and experienced. After a period of negotiations a contract was signed on March 23, 1960 partitioning a substantial community estate. The agreement provides that any property not listed as belonging to the community is recognized as the separate property of the party in whose name it stands or in whose physical possession it lies. The Open A-1 Ranch, Inc. stock at issue here is particularly recognized as the separate property of Mr. Gayle in the following provision:
"this recognition and acknowledgment by Renee Goudeau Gayle specifically including, but not being limited to, any and all right, title and interest which the said James F. Gayle has in Open A-1 Ranch, Inc., a Louisiana Corporation domiciled in Calcasieu Parish, Louisiana, and particularly that certain transfer from Arthur L. Gayle, Sr., to James Franklin Gayle dated March 1, 1954, recorded in Conveyance Book 555, page 335, records of Calcasieu Parish, Louisiana."
At the hearing on the exception of res judicata both Mr. Tritico and Mr. Raggio *42 testified that one of the questions discussed by the attorneys and their clients was whether the Open A-1 Ranch, Inc. stock belonged to the community. There is no evidence to show that any of the facts regarding this stock were misrepresented or concealed by Mr. Gayle or his attorney. It is apparent from a reading of the testimony that Mrs. Gayle was represented by competent counsel. After an investigation he concluded the stock in question was the separate property of Mr. Gayle. He examined the agreement, which had been prepared by Mr. Raggio, and advised Mrs. Gayle to sign.
In a weak effort to offset the testimony of Mr. Tritico and Mr. Raggio, Mrs. Liebendorfer testified that when the community property settlement was signed in Mr. Tritico's office, she was in a hurry to return to Arkansas and she simply followed the advice of the attorneys. She implies collusion between the attorneys, but there is absolutely no basis for such a suggestion.
It is true that the deed from Arthur L. Gayle, Sr. to James Franklin Gayle, dated March 1, 1954 and recorded in Conveyance Book 555, page 335 of the records of Calcasieu Parish (this being the deed referred to in the community property settlement), is drawn simply as a sale of a one-eighth interest in certain described land for a consideration of $10,000 cash and the deed does not state that the purchase is made with Mr. Gayle's separate funds for his separate estate. The record also shows that in October of 1954 Mr. Gayle, Sr. and his sons incorporated the Open A-1 Ranch, Inc., the defendant herein receiving 125 shares of stock which is in litigation here. Of course, it is plaintiff's contention that these facts create presumption that the stock was acquired with community funds. Be this as it may, there is no showing of any fraud which induced Mrs. Gayle to acknowledge that this stock was nevertheless the separate property of Mr. Gayle.
On the same day that the community property settlement was signed, the parties also executed an instrument (referred to by counsel as J-3) in which Mrs. Gayle states her intention to move to Arkansas and establish residence for purposes of securing a final divorce. This instrument provided that a certified copy of the property settlement would be filed in the Arkansas proceedings for approval and incorporation in the Arkansas decree.
On April 29, 1960, Mrs. Gayle filed a suit for divorce in Garland County, Arkansas. Among other things, she alleges that there are no property rights to be adjudicated because these issues have been settled amicably by a division of property. An attorney in Arkansas was appointed to represent the absent defendant. An answer was filed on defendant's behalf admitting that the community property settlement had been made.[3] A copy of the community property settlement was filed in the proceedings and the final divorce decree rendered on June 1, 1960 states that the property settlement "is hereby approved."
On April 3, 1967, Mrs. Liebendorfer (the former Mrs. Gayle) filed the present suit in Calcasieu Parish. She alleges that the defendant "perpetrated an active fraud upon her" in procuring her acknowledgment, in the community property settlement, that the Open A-1 Ranch, Inc. stock was his separate property. To support this allegation of fraud, she furthers avers that Mr. Arthur Gayle, Sr. and his four sons formed a partnership entitled "Open A-1 Ranch and Farms" in 1943 (this was before the marriage of the parties in 1947); that the defendant owned a one-eighth interest in the partnership; that the deed from Mr. Arthur L. Gayle, Sr. to the defendant, James F. Gayle on March 1, 1954, conveying a one-eighth interest in certain land was for a recited consideration of $10,000 cash, which funds belonged to the community; that later the business was incorporated under the name, Open A-1 *43 Ranch, Inc. and defendant received 125 shares of stock; that at the time of the community property settlement in March of 1960 the community still owned these shares of stock and defendant withheld from plaintiff all knowledge as to the manner in which he acquired these shares and represented to her that the stock was his separate property acquired prior to the marriage. Plaintiff alleges that this constituted a breach of the fiduciary duty owed by defendant to her upon dissolution of the marriage and shows fraud for which she is entitled to have the entire community property settlement set aside.[4]
To this petition the defendant filed, among other pleadings, an exception of res judicata based on the previous Arkansas decree approving the community property settlement. After a hearing at which evidence was taken on the issue of fraud, both as to the execution of the community property agreement and the procurement of the Arkansas decree, the district judge sustained the exception of res judicata. This is the judgment which was appealed.
From the above review of the facts, it is our conclusion there is no proof of extrinsic fraud practiced upon Mrs. Liebendorfer in the procurement of the Arkansas decree within our interpretation of the law of Arkansas as set forth above. Nothing was done by Mr. Gayle, Mr. Raggio or Mr. Tritico, that could be construed as a fraud, either in the inducement to sign the agreement or in the procurement of the Arkansas decree. Mrs. Gayle was represented by competent counsel and there is nothing to show any misrepresentation to or concealment from him or her. They knew and discussed the facts concerning Mr. Gayle's acquisition of the Open A-1 Ranch, Inc. stock, and Mrs. Gayle's own attorney advised her to sign the agreement. Of course, in the actual proceedings in Arkansas, Mr. Gayle played no part except that through his court-appointed attorney an answer was filed on his behalf making certain admissions and denials and stating that a community property settlement had been made. Clearly, there was no fraud practiced by Mr. Gayle on the Arkansas court in the procurement of this decree.
Furthermore, even accepting as true the allegations of plaintiff's petition that Mr. Gayle knew this corporate stock was community property and fraudulently induced Mrs. Gayle to acknowledge that it was his separate property, we think any such alleged fraud was intrinsic, rather than extrinsic. If indeed Mrs. Gayle was induced to sign the agreement by a fraudulent misrepresentation on the part of Mr. Gayle, she could and should have raised this issue in the Arkansas proceedings. Instead, she actually asked the Arkansas court to approve the agreement.
We now address ourselves to several arguments made by plaintiff in opposition to the exception of res judicata. Plaintiff argues first that the community property settlement was executed in Louisiana by residents of this state and should therefore be construed under Louisiana law under the doctrine of lex loci contractus; that even if plaintiff had attacked the property settlement in the Arkansas court the laws of Louisiana would have been applied. This may be, but the fact is that no such attack was made in the Arkansas proceedings. That court has now rendered a judgment in a matter of which it admittedly had jurisdiction. This judgment is entitled to full faith and credit unless it can be set aside.
Plaintiff next argues that the Arkansas law, allowing an attack on a prior judgment only for extrinsic fraud, is subject to an exception in cases involving contracts. Two cases cited in support of this contention are McCue v. McCue, 210 Ark. 826, 197 S.W.2d 938 (1946) and Tennison v. Tennison, 216 Ark. 748, 227 S.W.2d 138 (1950). Both of these cases involved an attempt by the former husband to reduce *44 the amount of alimony payments stipulated in a property settlement which was incorporated in a divorce decree. The question was whether the amount of the alimony was contracted by the parties, in which event, under Arkansas law, it could not later be changed by the court; or whether the amount of alimony was originally determined by the court, in which event it was subject to later change by the court to meet changing circumstances. Neither of these cases involved an attack on a judgment for fraud, either extrinsic or intrinsic. They do not support plaintiff's argument.
Plaintiff argues next that even if it is encumbent upon her to show extrinsic fraud, the document referred to by Counsel as "J-3", discussed above, constitutes such a fraud on the court of Arkansas. In our view, the facts show that this instrument was signed, following the execution of the community property settlement, to formalize the understanding of the parties that Mrs. Gayle was going to Arkansas to obtain her final divorce; that the community property settlement would be introduced and approved by the court there; and that certain other agreements as to alimony, visitation rights, etc. would also be made a part of that decree. Certainly, there is no showing of any fraud on the part of Mr. Gayle which induced Mrs. Gayle to sign this instrument, or that the instrument prevented her from attacking the property settlement in the Arkansas court. It was part and parcel of an arms-length transaction about which she was fully advised by her own attorney and as to which there was no misrepresentation, concealment or other fraud on the part of Mr. Gayle.
A final argument (made in plaintiff's supplemental brief on rehearing) is that the property settlement was not incorporated or merged in the Arkansas decree, so as to be given decretal effect. As stated above, the plaintiff herself prayed that the agreement be approved by the court. A full copy of the agreement was filed in the court record and the judgment approved the agreement. Under these circumstances the property settlement became merged in the decree. See Orr v. Orr, 206 Ark. 844, 177 S.W.2d 915 (1944); 27B C.J.S. Verbo Divorce § 301(2), pp. 408-414.
For the reasons assigned, our original decision, reversing the district court judgment and remanding this case for further proceedings, is now recalled and set aside. It is now ordered, adjudged and decreed that the judgment of the district court, sustaining defendant's exception of res judicata, is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
On rehearing, the judgment of the district court is affirmed.

On Application for Further Rehearing.
En Banc.
PER CURIAM.
The plaintiff-appellant has filed an application for further rehearing. She contends that our judgment on first rehearing erroneously interpreted Arkansas law. She argues that the contract partioning the community formed no part of the Arkansas decree, because the Arkansas tribunal's judgment did not comply with pertinent legislation of that forum. See Arkansas Statutes 34-1212 through 1215.
We were given concern by the forcefulness of the contentions made. However, upon further research, we have been reinforced in our conclusion that under Arkansas law the decree rendered in the Arkansas divorce suit is conclusive of the property settlement issue, and that the fraud asserted by the wife, intrinsic and not extrinsic, cannot be relied upon as a basis for setting aside any part of the Arkansas *45 decree, including the property settlement which was approved in that decree.
In the first place, under Arkansas law a collateral attack upon a judgment or decree is permissible only for extrinsic and not for intrinsic fraud. There are many cases to this effect. Parker v. Sims, 185 Ark. 1111, 1116, 51 S.W.2d 517 (1932) is the leading case, though there are many others both before and after Parker v. Sims, which hold to the same effect.
In one of the briefs it was suggested that Parker v. Sims might have been overruled by Ingram v. Luther, 244 Ark. 260, 424 S.W.2d 546 (1968). Parker v. Sims was not overruled by that case. Ingram v. Luther involved the finality of an ex parte decision quieting title to land in which service was not completed upon the opposing party except constructively, and the opposing party neither appeared in nor knew of the first proceeding. This presented an entirely different problem from that which exists when both parties were before the court.
The distinction is well illustrated by Phillips v. Phillips, 224 Ark. 225, 272 S.W.2d 433 (1954), which accorded finality to a Kansas divorce and division of property decree as to Arkansas land. The holding was that since both spouses were personally before the Kansas court its decree requiring conveyance of Arkansas land was binding on the Arkansas court. This rule applies specifically to consent judgments as well as to judgments on litigated issues. This is established by Lewis v. St. Louis, Iron Mt. & S. Ry. Co., 107 Ark. 41, 154 S.W. 198 (1913).
Since a valid decree, including a consent decree, is conclusive under Arkansas law on all matters adjudicated by it over which the court had jurisdiction, the basic question on these facts is whether an Arkansas Chancery Court, having personal jurisdiction over both parties in a divorce suit, has jurisdiction to approve a written property settlement. If the court does have this jurisdiction, such an approval renders the matter res judicata as between the parties and their privies.
The Arkansas Chancery Court is expressly authorized by statute to divide the spouses' property on divorce. Ark.Stats. Ann. Sec. 34-1212 expressly authorizes equity courts to enforce the performance of written agreements between husband and wife made in contemplation of divorce by such lawful ways and means as are in conformity with the rules and practices of equity. The Arkansas court acting under the authority of Sec. 34-1212 has for a century or more in divorce cases regularly approved property settlements, or disapproved them. These adjudications have regularly been regarded as binding upon the parties.
The better known cases have come up with reference to alimony orders. McCue v. McCue, 210 Ark. 826, 197 S.W.2d 938 (1946), noted in 3 Ark. Law Review 98 (1948), and Bachus v. Bachus, 216 Ark. 802, 227 S.W.2d 439 (1950) are the leading cases. In both of these cases alimony awards made in accordance with prior written property agreements have been approved by the divorce court, and the approvals were held conclusive as against later efforts to reduce the alimony award by one of the parties who was before the divorce court.
In Seaton v. Seaton, 221 Ark. 778, 255 S.W.2d 954, 256 S.W.2d 555 (1953) a different situation was dealt with, at the same time that the rule of McCue v. McCue was reaffirmed. In Seaton v. Seaton the alimony order was based on an oral agreement reached in the course of the divorce suit hearing as to the amount of alimony which the court should order. The holding was that this alimony order was modifiable later since the agreement was not a prior written one intended to be binding on the parties permanently, but only one made to aid the court at the time. The alimony order based on such oral agreement is modifiable in Arkansas like any order entered by the court on the basis of its own conclusions.
*46 The court in Seaton v. Seaton was careful to make clear that this did not change the rule of McCue v. McCue under which prior written agreements approved by the court must be respected. The court pointed out that such prior written agreements approved by the court are conclusive and can be enforced in separate subsequent proceedings. They are not thereafter subject to attack since their validity previously had been adjudicated and the later enforcement proceeding need not be a suit on the judgment but can be any action brought directly upon the contract which has previously been adjudicated to be valid.
The question now at issue, however, is not as to an amount of alimony, but is rather as to the validity of a division of property under a prior written contract approved by the court in the divorce decree.
The Arkansas law clearly provides that such property agreements approved by the divorce court are conclusive also. Several cases can be cited to this effect.
The first is Dunn v. Dunn, 174 Ark. 517, 295 S.W. 963 (1927). This is a holding that the divorce court has jurisdiction to approve prior written property settlement contracts, and must approve such a contract if it be validly made. The next case is Schley v. Dodge, Chancellor, 192 Ark. 365, 91 S.W.2d 280 (1936). This also makes clear the divorce court's jurisdiction to approve such a written contract. The Supreme Court specifically held that the divorce court not only had jurisdiction but should proceed to exercise its jurisdiction to approve such a written contract.
The next case in order is Orr v. Orr, 206 Ark. 844, 177 S.W.2d 915 (1944). The facts in this case are somewhat similar to those presented by the question discussed in this litigation. The pre-divorce written property settlement contract had been approved in prior divorce decree. The contract was not repeated in the decree but the decree referred to "the agreement signed by the plaintiff and defendant" in a manner indicating approval of the contract. The wife now seeks specific performance of the pre-divorce contract in the same court that granted the divorce, but the husband contends that a separate action at law on the contract is necessary. The holding was that the decree was final and specific performance was granted. The approval of the contract was a conclusive adjudication that it was valid and the parties were thereafter bound by it, and a new specific performance action based on the prior adjudication was permitted.
The jurisdiction of the divorce court to approve written property settlements, making them binding upon both parties even though one of the spouses seeks later to disavow the contract, was again confirmed by Grumbles v. Grumbles, 238 Ark. 355, 381 S.W.2d 750 (1964).
The case of Tennison v. Tennison, 216 Ark. 748, 227 S.W.2d 138 (1950) is in keeping with these cases, though it involved a wholly different problem. In that case there was a dictum as follows:
"Appellant correctly says that the property settlement (not an issue here) reflected an accord between husband and wife, and was contractual. In the absence of fraudulent inducement affecting its execution, the agreement could not be modified by judicial action."
Though this statement was dictum only, and not relevant to the decision, it is probably sound since it apparently does not refer to collateral attack for fraud, but only means that the court hearing a divorce suit should not modify a prior property contract except for fraud. There was no collateral attack on the prior property contract in that case.
On the basis of these authorities, we conclude that the Arkansas divorce court in the stated case had jurisdiction to pass upon the written property settlement contract, that it did so, and that its adjudication on that matter is under Arkansas law conclusive and not subject to collateral attack except for extrinsic fraud.
*47 For these reasons we adhere to our decision of October 3rd rendered upon rehearing. The plaintiff-appellant's application for further hearing is denied.
Application for rehearing denied.
NOTES
[1] The remainder of the decision in Hardin v. Hardin cites and quotes from other supporting cases as follows: "The above quotation was adopted in an opinion written by the late Minor W. Millwee found in Alexander v. Alexander, 217 Ark. 230, 229 S.W.2d 234. In the case of Parker v. Sims, 185 Ark. 1111, 51 S.W.2d 517 we said:

"The law is settled that the fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the could which resulted in the judgment assailed."
The above quotation was adopted in Jamieson v. Jamieson, 223 Ark. 845, 268 S.W.2d 881, and also in Croswell v. Linder, 226 Ark. 853, 294 S.W.2d 493. In the case of Nevil C. Withrow Co., Inc., v. Heber Springs School District, 229 Ark. 939, 320 S.W.2d 95, we quoted with approval from the Alexander case, supra, the following:
"`The law is settled that the fraud which entitles a party to "impeach a judgment must be fraud extrinsic of the matter tried in the cause, * * *. It must be a fraud practiced upon the court in the procurement of the judgment itself.'"
(3) We can find nothing in the petition in this case that could be construed under the above decision, as a fraud on the court. There is an allegation in the petition "* * * the conduct of the defendant as above described constituted fraud practiced on this court in procuring the decree of divorce * * *." This statement relative to what constitutes fraud is a conclusion of law. In the case of Sibley v. Manufacturers Furniture Co., 220 Ark. 234, 247 S.W.2d 20, we said:
"While the complaint alleges that the procurement of the default judgment was a fraud upon the court, that is a conclusion of law not admitted by the demurrer."
As heretofore noted the alleged fraud (referred to in § 29-506) must be "extrinsic of (that is, apart from) the matter tried in the cause * * *." We find no such fraud here. The fraud or deception which appellant complains of seems to be: (a) she was trapped into a compromising position with the man who took her riding, and (b) she thought she was signing a paper to give her husband a divorce when in fact it was to give her a divorce. Both situations were subject to explanation in a divorce proceeding and both were a part of the matter which was tried or could have been tried in the divorce suit. At no time does appellant say she did not know the divorce was granted when it was granted, and the petition clearly indicates she did know.
(4) We are not free to give a liberal interpretation to the statute simply to try to correct what might be considered an injustice done appellant. One of the earliest cases to construe the statute which is now § 29-506 was Izard County v. Huddleston, 39 Ark. 107. In that case we said
"The statute to vacate judgments by this proceeding is in derogation not only of the common law, but of the very important policy of holding judgments final after the close of the term. Citizens must have some confidence in the judgments of our judicial tribunals, as settlements of their controversies, and there should be some end to them. Unless a case be clearly within the spirit and policy of the act, the judgment should not be disturbed."
To the same effect see also Weller v. Studebaker Bros. Mfg. Co., 93 Ark. 462, 471, 125 S.W. 129.
[2] Louisiana law is more liberal. LSA-C.C.P. Article 2004 allows an attack on a judgment "obtained by fraud or ill practices * * *." (emphasis supplied) See also Willoz v. Veterans Acceptance and Thrift, Inc., La.App., 188 So.2d 186; St. Mary v. St. Mary, La.App., 175 So.2d 893; Dare v. Myrick, La.App., 168 So.2d 845; Leidig v. Leidig, La.App., 187 So.2d 201; Grant v. Securities Finance Company, La.App., 173 So.2d 356; Lee v. Carroll, La.App., 146 So. 2d 242 (3rd Cir. 1962).
[3] No issue is raised in the present case as to the jurisdiction of the Arkansas Court.
[4] Plaintiff relies on Pitre v. Pitre, 247 La. 594, 172 So.2d 693 (1965).